UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| DONALD KRISIK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25-cv-01274-MMM |
| | ) | |
| CHERRYLE HINTHORNE, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff proceeding pro se under 42 U.S.C. § 1983, presently incarcerated at Dixon Correctional Center, asserts claims for deliberate indifference to serious medical needs during his time at Illinois River Correctional Center in Canton Illinois.

I. **MERIT REVIEW**

The case is before the Court for a merit review of Plaintiff's complaint. The Court must "screen" Plaintiff's complaint, and through such process identify and dismiss any legally insufficient claim. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

Plaintiff names as Defendants Warden Cherryle Hinthorne, Warden Chance Jones, Wexford Health Sources, Inc., Lisa Bishop, Ginger McGinnis, Jennifer Meeker, Nurse Carrie, Layne Stambough, Tiffany Jinkins-Carter, Oscar Gomez, Officer Schrodt, Officer Collier, Officer Markley, Sergeant Nick Orwig, and Sergeant Dawdy.

Plaintiff filed a separate lawsuit, 25-cv-1060-SEM-DJQ, against corrections staff for allegedly contaminating a personal lubricant with a chemical agent, resulting in burns that festered into infections. That case is proceeding separately against the corrections staff for those alleged actions.

This action alleges deliberate indifference to a serious medical need – the chemical burns and resulting infection – against several different Defendants. Plaintiff alleges that he was delayed and/or denied necessary treatment causing significant pain, injuries, and emotional distress.

From December 20, 2023[1], until January 27, 2024, certain Defendants delayed or denied Plaintiff care. Plaintiff suffered chemical burns in December 2023. He submitted many requests to be seen for his condition. Wexford and Hinthorne caused the medical department to be understaffed, resulting in known delays that injured Plaintiff. Lisa Bishop, Ginger McGinnis, Jennifer Meeker, and Kaylee were responsible for authorization of nurse sick call screenings and appointment scheduling and failed to timely do so for Plaintiff's care causing suffering due to unnecessary delays.

---

[1] Plaintiff occasionally writes "2024" but in context it is clear the allegations begin in December 2023.

On January 8, 2024, Plaintiff saw Defendant Mental Health Practitioner Layne Stambough for an unrelated mental health call pass. He told Stambough about the issues he was having with chemical burns to his genitals. Stambough did not provide pain medication or do a physical examination of Plaintiff, but did order a urine dip stick test, which indicated the presence of an infection. Stambough did not order follow up care or order antibiotics. Plaintiff did not learn that the dip stick test indicated an infection until he received copies of medical records in September 2024.

Plaintiff was first screened by medical staff for this condition on January 10, 2024. Nurse Carrie saw Plaintiff and Plaintiff explained his chemical burns and blisters. Nurse Carrie did not visually examine Plaintiff's genitals. Nurse Carrie diagnosed Plaintiff's condition as a fungal infection, sight unseen, and provided Plaintiff anti-fungal cream which caused pain and inflammation upon application. Nurse Carrie did not provide Plaintiff with any other medication at that time.

Plaintiff filed a grievance and made many more sick call requests, and asked officers Markly, Collier, Schrodt, and sergeants Orwig and Dawdy if they could help him be seen at healthcare for these issues. He made these requests daily from January 16 – 21. Plaintiff sent a request slip to Hinthorne on January 17 asking her for help seeing medical and she responded by writing "TO:IA" and circling it.

Plaintiff was next seen on January 27, by Nurse Amanda, who is not a Defendant. She physically and visually examined Plaintiff's injuries and determined Plaintiff should see a physician. She provided a three-day supply of pain medicine. Plaintiff alleges he was not scheduled to see a physician.

Plaintiff was seen and examined on February 6, 2024, by Tiffany Jenkins-Carter related to a PREA complaint Plaintiff had filed. She also told Plaintiff she would schedule him with a physician. Plaintiff alleges he did not see a physician following this visit.

Plaintiff spoke to Lt. Skaggs on February 19, explained his issues, and the increasing apparent infection, and Skaggs got Plaintiff an appointment with Nurse Practitioner Gomez for February 26. When Gomez examined Plaintiff on February 26, he prescribed Prednisone, and provided Plaintiff with pain medication and antibacterial cream. The cream helped with the surface issues. Gomez also ordered antibiotics for Plaintiff, which were provided to Plaintiff "days later."

On April 4, 2024, Plaintiff was referred to see a urologist. As of August 15, 2024, when Plaintiff was transferred from Illinois River to Dixon, he had not yet been seen by a urologist.

Plaintiff states a plausible Eighth Amendment claim for deliberate indifference to a serious medical need against Warden Cherryle Hinthorne, Wexford Health Sources, Inc., Lisa Bishop, Ginger McGinnis, Jennifer Meeker, Nurse Carrie, and Tiffany Jinkins-Carter. Plaintiff has plausibly alleged that these Defendants knowingly delayed or denied Plaintiff's needed medical care causing pain and permanent injury. It is plausible that Wexford's policies were the moving force behind certain constitutional violations. Plaintiff plausibly alleges that Hinthorne knew of Plaintiff's condition, and of the insufficient medical staffing, yet did not take appropriate actions. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc); *Thomas v. Cook Cty Sheriff's Dept.*,

604 F.3d 293, 303 (7th Cir. 2010); *see also Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927-28 (7th Cir. 2004) (the standard for municipal liability in *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), applies to corporations as well)).

Plaintiff's allegations do not state a plausible claim against Layne Stambough or Oscar Gomez. Stambough saw Plaintiff for an unrelated mental health check on January 8, 2024, and nonetheless she heard his complaints regarding his genital issues and ordered a urine dipstick test for Plaintiff. She was not required to do more than this given her separate role at the prison and the unrelated reason for her seeing him on January 8. Oscar Gomez saw Plaintiff on February 26, after Lt. Skaggs intervened on Plaintiff's behalf. Gomez performed an examination, prescribed Prednisone, provided effective topical medication, provided pain medication, and prescribed antibiotics which Plaintiff received days later. The Constitution did not require more of Gomez.

Plaintiff's allegations do not state a claim against Officer Schrodt, Officer Collier, Officer Markley, Sergeant Nick Orwig, and Sergeant Dawdy. Plaintiff alleges he asked these corrections staff to assist him in encouraging medical staff to do something different after he was seen on January 10, and before he was seen on January 27. But Plaintiff was in communication with medical staff, had been seen for his condition, and his condition was not of the sort that a layperson would know that emergency care was needed. As such Plaintiff does not state a claim against these corrections staff. "A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference; it is just a form of failing to supply a gratuitous rescue service." *Adams v.*

*Reagle*, 91 F.4th 880, 894-95 (7th Cir. 2024), *cert. denied sub nom. Adams v. Arnold*, 146 S. Ct. 295 (2025) (applying *Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009)).

Finally, Plaintiff names current Illinois River Warden Chance Jones for purposes of effecting any injunctive relief ordered by the Court. But Plaintiff is housed at Dixon now so any involvement of Jones is moot and Jones will be dismissed from the action.

## II.     REQUEST FOR COUNSEL

Plaintiff has asked for court assistance in finding an attorney. Doc. 5.

This Court does not have the authority to require an attorney to accept *pro bono* appointments on civil cases such as this. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). The most that the Court may do is to ask for volunteer counsel. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992) ("… civil litigants have no constitutional or statutory right to be represented by counsel in federal court."). The Court must determine: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, if the plaintiff appears competent to litigate it himself. *Pruitt*, 503 F.3d at 654–55.

Plaintiff has not made a reasonable attempt to find counsel on his own and has not indicated that he is being prevented from doing so. First, there is no indication that Plaintiff does not have access to writing materials and to the mail. He has been in communication with the Court without apparent issue in this basic regard. Second, parties typically show they have made a reasonable attempt to find counsel by writing to several law firms that practice civil rights law on behalf of prisoners, explaining the specifics of this lawsuit, and asking for representation. Copies of those letters sent along

with copies of the responses received may then be filed with any renewed motion to request counsel. Any renewed motion should also explain any specifics as to Plaintiff's ability to litigate this case, including his education, legal experience, and any other issues that bear on his ability to represent himself.

Here, Plaintiff asserts that several law firms have declined to represent him. But it is unclear what Plaintiff asked for help with, and whether he asked for help specific to this lawsuit. Several pages of Plaintiff's exhibits in support of his motion here, and in support of his motion in 25-cv-1060, are duplicates, indicating that Plaintiff did not seek help specific to this lawsuit. It is not reasonable to expect a law firm to generally agree to help an individual with all their legal issues, or to investigate those issues when presented with a broad and general request such as that apparently sent by Plaintiff here.

### III.   MOTION TO CONSOLIDATE CASES

Plaintiff's motion to consolidate cases is denied. Doc. 7.

The Court may consolidate actions which involve a common question of law or fact. Fed. R. Civ. P. 42(a)(2). Requests for permissive joinder may be granted or denied in an exercise of the Court's discretion, where doing so would be in the interests of justice and would promote the efficient and effective resolution of all claims. Fed. R. Civ. P. 18, 19, 20.

Here, the parties to this action, and to Plaintiff's pending action in 25-cv-1060, do not overlap. That action relates to alleged cruel and unusual punishment by corrections staff via putting a chemical contaminant in Plaintiff's personal lubricant injuring

Plaintiff. This action is related to that action in that the medical condition underpinning it stems from those alleged injurious actions. But this action is against medical staff for failing to later properly treat the injuries and infection. There are no parties in common to the two suits, which relate to different alleged constitutional violations at different times. In an exercise of the Court's discretion over requests for permissive joinder the motion to consolidate cases is denied.

IT IS THEREFORE ORDERED:

1. **Plaintiff's Motion to Request Counsel [5] is DENIED.**

2. **Plaintiff's Motion to Consolidate Cases [7] is DENIED.**

3. **Pursuant to its merit review of the Amended Complaint under 28 U.S.C. § 1915A, the Court finds that the plaintiff states a plausible Eighth Amendment claim for deliberate indifference to a serious medical need against Warden Cherryle Hinthorne, Wexford Health Sources, Inc., Lisa Bishop, Ginger McGinnis, Jennifer Meeker, Nurse Carrie, and Tiffany Jinkins-Carter. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15. Plaintiff's claims against Defendants Stambough, Gomez, Officer Schrodt, Officer Collier, Officer Markley, Sergeant Nick Orwig, Sergeant Dawdy, and Chance Jones are dismissed for failure to state a claim, and the Clerk is to terminate these Defendants.**

4. **This case is now in the process of service. The plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give notice to the defendants and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the court.**

5. **The court will attempt service on the defendants by mailing each defendant a waiver of service. If a defendant fails to sign and return a waiver of service to the clerk within thirty days after the waiver is sent, the court will take appropriate steps to effect formal service through the U.S. Marshals service on that defendant and will require that defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).**

6. With respect to a defendant who no longer works at the address provided by the plaintiff, the entity for whom that defendant worked while at that address shall provide to the clerk said defendant's current work address, or, if not known, said defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the clerk and shall not be maintained in the public docket nor disclosed by the clerk.

7. The defendants shall file an answer within 60 days of the date the waiver is sent by the clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and later pleadings shall be to the issues stated in this order. Generally, an answer sets out the defendants' positions. The court does not rule on the merits of those positions unless a motion is filed by the defendants. Therefore, no response to the answer is necessary or will be considered. After the defendants have been served and have answered, the court will enter an order setting discovery and dispositive motion deadlines.

8. This district uses electronic filing, which means that, after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by the plaintiff with the clerk. The plaintiff does not need to mail to defense counsel copies of motions and other papers that the plaintiff has filed with the clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are NOT filed with the clerk. The plaintiff must mail discovery requests and responses directly to counsel for the appropriate defendant. Discovery requests or responses sent to the clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until the court has entered a scheduling order, which will explain the discovery process in more detail.

9. Counsel for the defendants is hereby granted leave to depose the plaintiff. Counsel for the defendants shall arrange the time for the deposition.

10. The plaintiff shall immediately notify the court, in writing, of any change in mailing address and telephone number. The plaintiff's failure to notify the court of a change in mailing address or phone number will result in dismissal of this lawsuit.

11. The clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Entered this 30th day of January, 2026.

*s/Michael M. Mihm*
MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE
